**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

BURLEY JONES,

                Plaintiff,

                                      Case No. 3:10-cv-353-J-JRK

vs.

MICHAEL ASTRUE,
Commissioner of Social Security,

                Defendant.

_____/

**OPINION AND ORDER**[1]

**I. Status**

Burley Jones ("Plaintiff") is appealing the Commissioner of the Social Security

Administration's final decision denying his claim for disability insurance benefits ("DIB"). On

March 1, 2006, Plaintiff filed an application for DIB, alleging a disability onset date of

September 16, 2005. Transcript of Administrative Proceedings (Doc. No. 13; "Tr.") at 49-51.

The Social Security Administration denied Plaintiff's application initially on June 5, 2006, Tr.

at 27-28, and upon reconsideration on August 16, 2006, Tr. at 30-31.   Plaintiff then

requested a hearing before an Administrative Law Judge ("ALJ"). Tr. at 32.  A hearing was

held on March 5, 2008, Tr. at 280-317, during which Plaintiff's attorney amended his claim

to request only a closed period of disability from September 16, 2005 through July 6, 2007,

Tr. at 282.[2]  Plaintiff was present and testified at the hearing. Tr. at 283-308.  A vocational

---

[1]      The parties consented to the exercise of jurisdiction by a United States Magistrate Judge. See Consent to the Exercise of Jurisdiction by a United States Magistrate Judge (Doc. No. 11); Order of Reference (Doc. No. 12), entered July 12, 2010.

[2]      There is a discrepancy in the record as to the exact date in July 2007 that should be considered the ending date of the requested closed period of disability. See Tr. at 12 (indicating the closing date was July 16, 2007); Tr. at 282 (indicating the closed period should end on July 6, 2007); Tr. at 478 (Plaintiff testifying he returned to work in July 2007).  However, this does not affect the undersigned's analysis.

-2-

expert ("VE") also testified at the hearing.  Tr. at 309-16.  On April 15, 2008, the ALJ issued a Decision finding Plaintiff not disabled during the closed period of disability.  Tr. at 12-18. Following the ALJ's Decision, Plaintiff filed a Request for Review by the Appeals Council, Tr. at 7, which was denied, Tr. at 3-5.  Plaintiff then sought review in federal court.  See Complaint (Doc. No. 1) in Case No. 3:08-cv-816-J-HTS, filed August 19, 2008.  On February 26, 2009, the Honorable Howard T. Snyder reversed and remanded the ALJ's Decision with instructions to carefully evaluate the opinions of Plaintiff's treating physician.  Tr. at 366-73.

On remand, the ALJ conducted a supplemental hearing on August 24, 2009.  Tr. at 476-528.  At the supplemental hearing, the ALJ heard testimony from Plaintiff, Tr. at 477-79, 509, 512-19; a second VE, Tr. at 520-28; and an impartial medical expert, Tr. at 480-512. On November 21, 2009, the ALJ issued his second Decision again denying Plaintiff's claim. Tr. at 330-41.  The Appeals Council declined to assume jurisdiction, Tr. at 318-20, making the ALJ's second Decision the final decision of the Commissioner.  Plaintiff commenced this action under 42 U.S.C. § 405(g) by timely filing the Complaint (Doc. No. 1) on April 23, 2010, seeking judicial review of the Commissioner's final decision.  Plaintiff has exhausted the available administrative remedies, and the case is properly before the Court.

Plaintiff raises one issue on appeal: whether the ALJ failed to fully and fairly develop the record "by not requesting a consultative examination" of Plaintiff.  Memorandum in Support of Complaint (Doc. No. 16; "Pl.'s Mem."), filed October 5, 2010, at 4.  After a thorough review of the entire record and consideration of the parties' respective memoranda, the undersigned finds the Commissioner's final decision is due to be affirmed.

## II. The ALJ's Decisions

When determining whether an individual is disabled,[3] an ALJ must follow the five-step sequential inquiry set forth in the Code of Federal Regulations ("Regulations"), determining as appropriate whether the claimant (1) is currently employed or engaging in substantial gainful activity; (2) has a severe impairment; (3) has an impairment or combination of impairments that meets or medically equals one listed in the Regulations; (4) can perform past relevant work; and (5) retains the ability to perform any work in the national economy. 20 C.F.R. §§ 404.1520, 416.920; see also Phillips v. Barnhart, 357 F.3d 1232, 1237 (11th Cir. 2004). The claimant bears the burden of persuasion through step four and, at step five, the burden shifts to the Commissioner. Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

In the ALJ's first Decision, he performed the five-step sequential analysis set forth in 20 C.F.R. sections 404.1520(a)(4) and 416.920(a)(4). See Tr. at 12-18. At step one, the ALJ found Plaintiff "ha[d] not engaged in substantial gainful [activity] during the requested closed period of disability." Tr. at 14. At step two, the ALJ determined Plaintiff "ha[d] the following severe impairments: [l]umbar degenerative disc disease with history of herniated nucleus pulpous at L3/L4 with L3 radiculopathy that was surgically corrected in February 2006." Tr. at 14. At step three, the ALJ found Plaintiff "d[id] not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." Tr. at 15. Next, the ALJ determined Plaintiff's residual functional capacity ("RFC") was "to perform light work . . . except [Plaintiff wa]s restricted from climbing ropes, ladders and scaffolds and [wa]s further restricted from work

---

[3]    "Disability" is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]"    42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

around vibration." Tr. at 15. At step four, the ALJ concluded Plaintiff "[wa]s unable to perform any past relevant work." Tr. at 17. Then, at step five, the ALJ considered Plaintiff's age, education, work experience, RFC, and the VE's testimony that Plaintiff "ha[d] acquired work skills from past relevant work that [were] transferable to another occupation," to determine there were other jobs that existed in significant numbers in the national economy Plaintiff could have performed during the closed period of disability. Tr. at 17. Thus, the ALJ concluded Plaintiff was not under a disability from September 16, 2005 through July 16, 2007. Tr. at 18.

On appeal, Judge Snyder analyzed whether "the ALJ erred by not fully explain[ing] what evidence was relied upon to render [his] decision." Tr. at 367 (internal quotation and citations omitted). Judge Snyder recognized the discrepancies in Plaintiff's treating physician's notes and concluded the ALJ's failure to address the "perplexing array of findings" constituted reversible error. Tr. at 370-71.

After conducting a supplemental hearing, see Tr. at 476-528, the ALJ again concluded Plaintiff was not disabled during the closed period of disability, Tr. at 341.[4] In the ALJ's second Decision, dated November 21, 2009, he followed the required five-step sequential inquiry. See Tr. at 332-41. At step one, the ALJ found Plaintiff "ha[d] not engaged in substantial gainful activity during the requested closed period of disability." Tr. at 332. At step two, the ALJ indicated Plaintiff "ha[d] the following severe impairment: a history of lumbar degenerative disc disease with history of herniated nucleus pulpous at L3-L4 with L3 radiculopathy that was surgically corrected in February 2006." Tr. at 333. At step

---

    [4]    During the supplemental hearing, the ALJ made clear the closed period of disability was from September 16, 2005 to July 1, 2007, Tr. at 479, although his Decision reflects a closing date of July 5, 2007, Tr. at 330. As indicated supra, the discrepancy in the closing date does not affect the undersigned's analysis.

three, the ALJ stated Plaintiff "d[id] not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." Tr. at 333.  The ALJ found that during the closed period of disability, Plaintiff "ha[d] the [RFC] to perform light work" with the following exceptions:

> [Plaintiff] may occasionally lift and carry 20 pounds and may frequently lift and carry 10 pounds. [Plaintiff] may sit, stand and walk for at least six hours in an eight hour work day. [Plaintiff] may occasionally bend, climb stairs/and ramps, crouch, kneel and crawl. [Plaintiff] should not climb ropes, ladders or scaffolds. [Plaintiff] may frequently balance. . . .  [Plaintiff] should not do any work around excessive or concentrated vibration.

Tr. at 333.  The ALJ also recognized that during the closed period, "[Plaintiff] ha[d] no problem with his ability to manipulate in terms of reaching, handling, fingering, holding and turning objects within the weight limits above . . . [and] no communicative deficits regarding his ability to see, speak or hear." Tr. at 333.  Then, at step four, the ALJ found Plaintiff "[wa]s unable to perform any past relevant work." Tr. at 339.  At step five, based on the second VE's testimony and Plaintiff's age, education, work experience, and RFC, the ALJ determined other jobs existed in significant numbers in the national economy during the closed period of disability that Plaintiff could have performed. Tr. at 340.  Finally, the ALJ concluded Plaintiff was not disabled during the closed period of disability. Tr. at 341.

### III.  Standard of Review

This Court reviews the Commissioner's final decision as to disability pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).  Although no deference is given to the ALJ's conclusions of law, findings of fact "are conclusive if . . . supported by 'substantial evidence' . . . ." Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001) (citing Falge v. Apfel, 150 F.3d 1320, 1322 (11th Cir. 1998)).  "Substantial evidence is something 'more than a mere scintilla, but less than a preponderance.'"  Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005)

(quoting <u>Hale v. Bowen</u>, 831 F.2d 1007, 1011 (11th Cir. 1987)).  The substantial evidence standard is met when there is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  <u>Falge</u>, 150 F.3d at 1322 (quoting <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971)).  It is not for this Court to reweigh the evidence; rather, the entire record is reviewed to determine whether "the decision reached is reasonable and supported by substantial evidence."  <u>Cornelius v. Sullivan</u>, 936 F.2d 1143, 1145 (11th Cir. 1991) (internal quotation and citations omitted); <u>see also</u> <u>McRoberts v. Bowen</u>, 841 F.2d 1077, 1080 (11th Cir. 1988); <u>Walker v. Bowen</u>, 826 F.2d 996, 999 (11th Cir. 1987).  The decision reached by the Commissioner must be affirmed if it is supported by substantial evidence–even if the evidence preponderates against the Commissioner's findings. <u>Crawford v. Comm'r of Soc. Sec.</u>, 363 F.3d 1155, 1158-59 (11th Cir. 2004) (per curiam).

## IV.  Discussion

The sole issue on appeal is whether the ALJ failed to fully and fairly develop the record because the ALJ only heard from an impartial medical expert and a VE at the supplemental hearing, rather than having Plaintiff undergo a consultative examination prior to the supplemental hearing.  Plaintiff argues that because Plaintiff's only treating physician's "opinions were given little or no weight, the only evidence of any limitations is from a physician who has never examined or seen" Plaintiff.  Pl.'s Mem. at 5 (emphasis removed). To support this contention, Plaintiff asserts the appropriate course of action would have been for the ALJ to have Plaintiff undergo a consultative examination "to insure . . . [P]laintiff is physically examined by a physician instead of the physician who merely testifies from records." <u>Id.</u>

Contrary to Plaintiff's assertions, the ALJ relied on Plaintiff's treating physician's opinions to the extent those opinions aligned with the objective medical evidence and the

non-examining physician's opinions.  The ALJ detailed the discrepancies that exist within the treating physician's opinions.  Then, the ALJ explained his reasoning for the specified weight given to each opinion rendered by the treating physician.  As explained more fully below, the ALJ's second Decision is supported by the consistent portions of the treating physician's opinions, the non-examining physician's opinions, and the medical evidence in the record.

"It is well-established that the ALJ has a basic duty to develop a full and fair record." Ellison v. Barnhart, 355 F.3d 1272, 1276 (11th Cir. 2003) (citing 20 C.F.R. § 416.912(d)). "Nevertheless, the claimant bears the burden of proving that he is disabled, and, consequently, he is responsible for producing evidence in support of his claim." Ellison, 355 F.3d at 1276 (citing 20 C.F.R. § 416.912(a), (c)).  While "[t]he [ALJ] has a duty to develop the record where appropriate[,]" the ALJ "is not required to order a consultative examination as long as the record contains sufficient evidence for the [ALJ] to make an informed decision." Ingram v. Comm'r of Soc. Sec., 496 F.3d 1253, 1269 (11th Cir. 2007) (citing Doughty, 245 F.3d at 1281).  Furthermore, to remand a case for the ALJ's failure to fully develop the record, there must be a showing that the claimant's right to due process has been violated because of such failure. Brown v. Shalala, 44 F.3d 931, 934-35 (11th Cir. 1995).  Prejudice exists when the record contains evidentiary gaps which may cause the ALJ to reach an unfair determination due to the lack of evidence. Id. at 935.

Here, no such gaps exist and Plaintiff has not raised any issue regarding his right to due process.  The ALJ conducted a supplemental hearing during which he heard testimony from Plaintiff, Tr. at 477-79, 509, 512-19; a VE, Paul Dolan, Tr. at 520-28; and an impartial medical expert, Charles Hancock, M.D., Tr. at 480-512.  Throughout the supplemental hearing, the ALJ engaged in extensive questioning of Dr. Hancock. See Tr. at 480-512.

The ALJ specifically asked Dr. Hancock to address the inconsistencies in the notes of Gregory Keller, M.D., Plaintiff's treating physician.  Tr. at 481-82.  Dr. Hancock thoroughly analyzed Plaintiff's medical records and Dr. Keller's notes.  Tr. at 480-512.  Dr. Hancock confirmed that during the closed period of disability, Plaintiff had some limitations with regard to sitting, standing, and walking, Tr. at 506; and Plaintiff could occasionally climb ropes and ladders, and frequently climb ramps and stairs, Tr. at 510.  Further, Dr. Hancock indicated Plaintiff could balance, kneel, and crawl frequently, and Plaintiff could stoop and crouch occasionally.   Tr. at 510-11.   Dr. Hancock also noted Plaintiff had no restrictions in manipulative movements and no communicative limitations.   Tr. at 511.   The only environmental limitation Dr. Hancock placed on Plaintiff was the need to avoid "concentrated vibrations." Tr. at 511.  Finally, when asked by the ALJ if Plaintiff "would have been able to return to work within 12 months of the original alleged onset date per Dr. Keller's opinion," Dr. Hancock answered that he could not "find any reason" that would have prevented Plaintiff from returning to work within twelve months of his original onset date.  Tr. at 511-12.

         After Dr. Hancock's testimony, the ALJ presented a hypothetical, including the general restrictions of light work plus the additional restriction of "avoid concentrated exposure to vibration," to the VE, Mr. Dolan. Tr. at 522-23. Mr. Dolan concluded there were jobs that existed in significant numbers in the national economy that Plaintiff could have performed during the closed period of disability.  Tr. at 524-26.  Then, the ALJ further restricted the hypothetical by proposing that "the ability to sit, and stand and walk are equally divided four hours each during an eight hour work day with the ability to alternate your position every 30 minutes."  Tr. at 526.  Even with that additional limitation, the VE concluded there were jobs that existed in significant numbers in the national economy Plaintiff could have performed during the closed period of disability.  Tr. at 526-28.

In the ALJ's second Decision, he thoroughly summarized Plaintiff's medical history, including Dr. Keller's progress notes and Dr. Hancock's opinions.  Tr. at 334-39.  In accordance with Judge Snyder's instructions, the ALJ analyzed the discrepancies in Dr. Keller's notes and indicated the weight given to each opinion Dr. Keller provided.  Tr. at 336-38.  First, the ALJ noted, "Dr. Keller completed a temporary disabled parking permit [for Plaintiff] indicating in particular that this disability permit should not extend past April 20, 2006."  Tr. at 336; see also Tr. at 236.  The ALJ explained that Dr. Keller's notations on that form "suggest[ed] that Dr. Keller expected some improvement in [Plaintiff's] condition."  Tr. at 336.  The suggestion that Dr. Keller believed Plaintiff's condition would improve "was consistent with [Dr. Keller's] later progress note in April of 2006, [which noted Plaintiff] would be able to return to some kind of work activity."  Tr. at 336; see also Tr. at 184.

Next, the ALJ discussed the form completed by Dr. Keller on June 12, 2006.  Tr. at 337; see also Tr. at 178.  In that form, Dr. Keller indicated Plaintiff "could not squat but could do heel and toe walking."  Tr. at 337; see also Tr. at 178.  The ALJ determined Dr. Keller's opinions contained in that form deserved "little weight because [they were] inconsistent with [Dr. Keller's] own findings" and Dr. Hancock's opinions.  Tr. at 337; see also Tr. at 500.

Additionally, the ALJ considered two forms Dr. Keller completed in July 2006, in which Dr. Keller offered conflicting opinions about the type of work Plaintiff could perform.  Tr. at 337.  On July 5, 2006, Dr. Keller indicated Plaintiff "could return to light duty work."  Tr. at 337; see also Tr. at 177.  Then, on July 28, 2006, Dr. Keller opined Plaintiff could return to his past work as a mechanic, which Plaintiff described as a heavy job, while further noting if Plaintiff could not return to his past work, "he could perform light work."  Tr. at 175; see also Tr. at 337, 338.

-9-

The ALJ next analyzed a letter written by Dr. Keller on September 20, 2006, Tr. at 166, and a form filled out by Dr. Keller on September 25, 2006, Tr. at 167.  Tr. at 338.  The ALJ noted Dr. Keller's opinions given in the September 25th form, especially the opinion that Plaintiff "would be disabled for the rest of his life," were wholly inconsistent with Dr. Keller's "own prior office notes" and most strikingly, the September 20th letter, in which Dr. Keller indicated Plaintiff had "a light duty restriction that should be considered permanent."  Tr. at 166.  The ALJ determined Dr. Keller's opinion that Plaintiff was capable of performing light duty work during the closed period deserved greater weight because "he was [Plaintiff's] treating physician and this finding . . . was supported by Dr. Hancock's hearing opinion and the general record of evidence."  Tr. at 338.

After a thorough review of the ALJ's second Decision and the record, it is clear the ALJ did not completely discount Dr. Keller's opinions.  Rather, the ALJ evaluated Dr. Keller's opinions and considered them somewhat credible to the extent they aligned with the objective medical evidence and Dr. Hancock's opinions.  Tr. at 337-38.  Particularly, the ALJ assigned "greater weight" to Dr. Keller's opinion that Plaintiff could have performed light duty work, as that opinion is consistent with the evidence in the record.  Tr. at 338.  Plaintiff readily concedes that Dr. Keller's opinions are inconsistent, but Plaintiff also argues, "Depending on an analysis of the evidence and notes from Dr. Keller[, P]laintiff [wa]s either restricted to sedentary work or a reduced range of light duty work."  Pl.'s Mem. at 5.  To the extent Dr. Keller's inconsistent opinions can be construed as restricting Plaintiff to sedentary work, the ALJ analyzed and properly rejected such restrictions.  See Tr. at 336-39.  The ALJ's RFC is consistent with the portion of Dr. Keller's opinion that Plaintiff could have performed light work, Dr. Hancock's opinion, and the record.  Therefore, Plaintiff's argument that "the only evidence of any limitations is from a physician who has never examined or

-10-

seen" Plaintiff, Pl.'s Mem. at 5 (emphasis removed), is incorrect because the ALJ relied on Dr. Keller's opinion that Plaintiff was restricted to light duty work during the closed period of disability, Tr. at 338.[5]

Regarding Plaintiff's contention that the ALJ was required to order a consultative examination of Plaintiff prior to the supplemental hearing, Plaintiff cites no authority, and the Court has found none, that required the ALJ to order a consultative examination in this case. Plaintiff reasons the ALJ should have ordered a consultative examination because the ALJ gave "little or no weight" to the opinions of Dr. Keller, Plaintiff's only treating physician. Pl.'s Mem. at 5. The only authority Plaintiff relies on is 20 C.F.R. section 404.1517, Pl.'s Mem. at 6, which states in pertinent part: "If your medical sources cannot or will not give us sufficient medical evidence about your impairment for us to determine whether you are disabled or blind, we *may* ask you to have one or more physical or mental examinations or tests." 20 C.F.R. § 404.1517 (emphasis added).

As long as there is sufficient evidence in the record, an ALJ is not required to order a consultative examination. See Ingram, 496 F.3d at 1269. Here, the ALJ relied on the opinions of Dr. Keller, the treating physician, and Dr. Hancock, the non-examining physician, as well as the evidence in the record to conclude that Plaintiff could have performed light duty work during the closed period of disability. Therefore, the ALJ was not required to order a consultative examination, and the ALJ's second Decision is supported by substantial evidence.

---

[5]     The undersigned recognizes that generally, the opinions of non-examining physicians, taken alone, do not constitute substantial evidence. Broughton v. Heckler, 776 F.2d 960, 962 (11th Cir. 1985) (citing Spencer ex rel. Spencer v. Heckler, 765 F.2d 1090, 1094 (11th Cir. 1985)). However, an ALJ may rely on a non-examining physician's opinion that is consistent with the evidence, while at the same time rejecting the opinion of a treating physician that is inconsistent with the evidence. Oldham v. Schweiker, 660 F.2d 1078, 1084 (11th Cir. Unit B 1982). Here, as explained supra, the ALJ did not solely rely on the non-examining physician, Dr. Hancock, to the exclusion of the treating physician, Dr. Keller.

Even if the ALJ had ordered a consultative examination, the Commissioner correctly notes that "an in person medical evaluation after July 2007, would provide little, if any, evidence of whether Plaintiff was disabled during the alleged closed period" because Plaintiff returned to work in July 2007.  See Memorandum in Support of the Commissioner's Decision (Doc. No. 17), filed November 10, 2010, at 13.  A consultative physician examining Plaintiff prior to the supplemental hearing would have had to largely rely on the medical evidence in the record, just as Dr. Hancock did, to render an opinion regarding Plaintiff's status during the closed period of disability.  Any value associated with such an examination would be minimal, and as noted supra, the record contained sufficient evidence for the ALJ to render his decision without a consultative examination.

## V.  Conclusion

After a thorough review of the record, the undersigned is convinced the ALJ fully and fairly developed the record, and the ALJ was not required to have Plaintiff undergo a consultative examination.  The ALJ's second Decision is supported by substantial evidence.  Accordingly, it is

**ORDERED:**

1.      The Clerk of Court is directed to enter judgment pursuant to sentence four of 42 U.S.C. § 405(g) **AFFIRMING** the Commissioner's final decision.

2.      The Clerk of Court is further directed to close this case.

**DONE AND ORDERED** at Jacksonville, Florida on September 16, 2011.

_James R. Klindt_
**JAMES R. KLINDT**
United States Magistrate Judge

jld
Copies to:
Counsel of Record